## Monroe *versus* Monroe.

1. Defendant who was unable to read, and could simply write his name, signed a note and gave it to plaintiff. The note was given in 1863, and contained a confession of judgment and waiver of exemption. Judgment was entered thereon, and in 1868, and in 1873, defendant signed an amicable scire facias to revive with confessions of judgments of revival. In 1873, a third scire facias to revive issued and defendant was served, when he obtained a rule to show cause why the original judgment should not be opened and he be let into a defence. The rule was made absolute, and at the trial defendant testified that he had no knowledge that the confession of judgment and the waiver of exemption were contained in the original note; that these portions were not read to him when he signed the note, which he supposed to be simply a promissory note. And further, that he signed it with an understanding that the plaintiff should examine his books to ascertain what defendant owed him, and that the note should stand for whatever balance was found to be due. He also testified that the authority to revive was signed by him without any knowledge of its import and upon an express understanding that the books were to be examined. *Held*, that while the mere fact of the revivals might have been a circumstance entitled to some consideration with the jury in deciding as to how much weight should be attached to defendant's testimony, yet if the original judgment was obtained by fraud and misrepresentation, and the subsequent revivals were a continuation of the fraud, they could not add anything to the validity of the original judgments.

2. In specifications of error, the points and answers of the court below must be quoted *in totidem verbis*, or the Supreme Court may disregard them.

March 11th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas of *Luzerne county:* Of January Term 1880, No. 205.

Feigned issue, wherein Perry Monroe, to use of J. S. Koons, was plaintiff and Henderson Monroe defendant, to try the validity of a judgment-note.

[Monroe v. Monroe.]

The note was to stand as a declaration. The defendant pleaded payment with leave, &c.

It appeared that, on March 2d 1863, Henderson Monroe signed a note for $501.75, payable to Perry Monroe or bearer, with confession of judgment and waiver of inquisition and exemption. Two days thereafter judgment was entered thereon in the name of Perry Monroe, to the use of J. S. Koons. On February 29th 1868 and February 20th 1873, the defendant signed an amicable scire facias to revive, with confessions of judgment thereon. On the 20th of February 1878, a scire facias to revive the judgment issued, and was served on defendant, when he obtained a rule to show cause why the original judgment should not be opened; which rule was made absolute, and this issue was then framed.

At the trial, before Harding, P. J., the defendant testified, in substance, as follows: That Koons, the father of the equitable plaintiff, kept a country store, where defendant was in the habit of selling the produce of his farm and making purchases. At the time the note was signed, said Koons sent for defendant for the purpose of making a settlement; that the note was prepared and waiting his signature; that defendant asked how much his indebtedness was, and Koons replied, $501.75; that defendant replied, he thought that was a big bill, and he would like to look over Koons's books; that the latter said he would go up stairs and find them, but returned, saying he could not find them, and insisted on defendant signing the note. Defendant still urged him to hunt up the books, and Koons went to look for them a second, and even a third, time, and that each time said, he could not find the books; that finally he said to defendant that if he would put his name to the note he would hunt up the books, and, as quick as he found them, he would let him know, and he would look the account over, and if it was not right he would make it right; that defendant thought the balance largely in excess of what he owed Koons; but, being an ignorant man, and not able to read, and merely able to scratch his name, he had no written memorandum with which to show that Koons was in error; that Koons read over the note to defendant, but only read the upper portion of it, which made it read like a simple promissory note; that Koons remarked to him, " I will not ask you to sign a tight note, or one of those cut-throat notes, as they call them : it is nothing but a common note;" that defendant then signed the note, and heard nothing further in regard to it until the amicable scire facias to revive was brought to him, and that he signed it without the least knowledge of its contents, and upon the renewed assurance that the books of Koons were to be examined and a settlement made, and that he signed the second scire facias under like circumstances; that he was never informed, and never knew, that there was a judgment against him until the third scire facias was

served on him. The wife of the defendant corroborated him with respect to the revivals. When Koons's son came to get the revival, she had protested that the transaction was dishonest, but her husband assured her it was the only way to procure a settlement, and that if he refused to sign it would make Koons mad, and he would never get a settlement.

Koons's testimony was in direct conflict with defendant's. He testified that when the note was given, the books were on the table in front of them, and that they looked over them, ascertained the balance, and made the note accordingly. That the note was read to Monroe in full as it was written, and that he fully comprehended its import. Several witnesses testified that Koons's reputation for truth was bad.

The plaintiff submitted the following points, to which are appended the answers of the court.

1. That if the jury believe that the note was read over to Henderson Monroe before he signed it, there was no fraud in the transaction, and the verdict should be for the plaintiff.

Ans. Affirmed.

2. That a contract originally fraudulent may be ratified without any additional consideration ; that therefore, if Henderson Monroe signed the renewals as revivals of this judgment, without fraud practiced upon him at the time of signing such revivals, and negligently or carelessly omitted to have the same read to him, he would be estopped from denying the validity of the original judgment.

Ans. Affirmed.

3. That if the jury believe that at the time of signing the original note, or at the time of signing either of the renewals of the same, the defendant was aware of their contents, the verdict must be for the plaintiff.

Ans. Affirmed.

4. That there is no evidence in the case to show any fraud practiced upon Henderson Monroe at the time of the second renewal ; that it was therefore an affirmance and ratification of the original contract.

Ans. Affirmed, if the jury find the facts to be as stated.

The defendant submitted the following points, both of which the court affirmed.

1. That if the jury believe defendant was unable to read the note in evidence, and the plaintiff read it for him, leaving out the confession of judgment in his reading, thereby causing the defendant to sign a note, in ignorance of its true contents, the plaintiff cannot recover in this case, no matter what may be the state of their accounts.

2. If the jury believe that defendant was induced to sign this note, or confession of judgment, under a mistaken idea of its contents, believing it to be a common promissory note, when in

[Monroe v. Monroe.]

fact it was a judgment note, with waiver, caused by the fraud of William Koons, the party in interest, in reading to him a part only of the note as the whole, defendant would not be prevented from making defence to the note by reason of his signing the revivals, unless he was first made acquainted with the true contents of the original note.

In the general charge the court, inter alia, said : " The points which were read in your presence, and which were presented to me by the respective counsel, were affirmed, modified or negatived, as you remember. * * * [This, you will see, is purely a question of credibility between William Koons, on the one side, and Henderson Monroe on the other; and it is the exclusive province of the jury, not of the court, to pass upon this important feature of the case.] You heard the defendant testify ; under the law he is a competent witness; his credibility is for you; to some extent his testimony was corroborated by that of his wife—certainly, as to the amount of the indebtedness existing between them. Again, if after the judgment had been thus given, it laid for five years, as is alleged on the part of the defendant, and then a renewal was taken by Mr. Koons, or by some one for him, to Henderson Monroe, and the latter signed it, as he said he did, upon the distinct understanding that the books were to be examined, and the basis of the actual indebtedness ascertained, then the revival could not have given additional validity to the original debt. You must take these men as they are. You are intelligent, and know the relations and surroundings of people in the country, situated as these two were. [If, at the time the second revival was taken, Mr. Monroe was induced to sign it, as he says, that he might get a statement out of Mr. Koons, the fact that he executed that second revival, gives no additional validity to the original judgment.] The credibility of the witnesses is for you. It is alleged that William Koons was impeached; six or seven witnesses swore upon the stand that his reputation for truth and veracity was bad; you remember the other questions that were asked them by the counsel representing Mr. Koons. This is one of the methods known to the law of contradicting a witness. Now, is the credibility of William Koons, as connected with this case, affected by the testimony? That question is entirely for you ; it is not for the court, even to hint, in relation to it.''

Verdict for defendant and after judgment thereon, plaintiff took this writ and alleged, that the court erred (fourth and fifth assignments of error) in the portions of the above charge included in brackets. His other three assignments of error were set forth as follows :

1. That the court erred in not directing the jury that their verdict should be for the plaintiff.

2. The court erred in not answering plaintiff's second point to

the jury, either specifically by reading the same, or in the general charge.

3.  That the court erred in not answering plaintiff's third point, either specifically by reading the same to the jury as a part of the charge, or substantially in the general charge.

*Thomas H. Atherton* and *Allan H. Dickson,* for plaintiff in error.—The parol evidence was not sufficiently clear to overturn the three written declarations of the defendant, as to the nature of his indebtedness : Todd *v.* Campbell et al., 8 Casey 250 ; Faust *v.* Haas, 23 P. F. Smith 295 ; Cauffman *v.* Long, 1 Norris 72.

Further, the evidence of defendant himself, shows that in regard to the two agreements for renewal, he neither read them, nor asked to have them read ; which would be evidence of such gross carelessness as would prevent his attempting to repudiate his contracts : Pennsylvania Railroad Co. *v.* Shea, 1 Norris 198 ; Greenfield's Estate, 2 Harris 496 ; Stine *v.* Sherk, 1 W. & S. 195 ; Dean *v.* Fuller, 4 Id. 474.

Even if it had been indubitably established that the original judgment note had been obtained by fraud, yet the defendant was estopped by the subsequent revivals from setting up such fraud as a defence : Pearsoll *v.* Chapin, 8 Wright 9 ; Seylar *v.* Carson, 19 P. F. Smith 81 ; Negley *v.* Lindsay, 17 Id. 217.

This court will scan closely the charge of the court below in case points are not specifically answered ; and if in the charge of the court these points do not appear to be fully explained to the jury so far as they are pertinent, it is error, for which this court will reverse the judgment : Tenbrook *v.* Jahke, 27 P. F. Smith 396 ; Slaymaker *v.* St. John, 8 Wright 9.   The reference to plaintiff's points in the general charge was not sufficient.

It was the province of the court and not of the jury, to decide the effect of the renewals : Potts *v.* Wright, 1 Norris 498.

*Q. A. Gates,* for defendant in error.—The second and third assignments of error were not in accordance with Rules 22 and 23 of this court.   The points are not quoted *in totidem verbis,* as required by these rules.   The record shows that the plaintiff's points were answered in the affirmative.

The court was not asked to direct a verdict for the plaintiff. An omission to charge upon a point where there is no request, is not error : Davis *v.* Bigler, 12 P. F. Smith 242 ; Id. 482.

Mr. Justice PAXSON delivered the opinion of the court, May 3d 1880.

There are five assignments of error in this case.   We will consider them in their order.

1.  The record discloses no request to the court to give a binding

[Monroe v. Monroe.]

instruction to the jury to find a verdict for the plaintiff. And had such request been made it would have been the duty of the court to decline it. The facts were for the jury.

2 and 3. These errors are not properly assigned. The points referred to are not set forth as required by the rules of court. We might well decline to discuss them for this reason. The record shows, however, that they were read to the jury and affirmed. That they were not further referred to by the court in the general charge is not material.

4. This portion of the charge, standing alone, looks like error, but an examination of the whole charge as applied to the facts of the case, shows that it was not. The defendant, an ignorant man and unable to read, had signed a judgment note in favor of plaintiff for an alleged indebtebness to William Koons, dated March 2d 1863, for $501.75. The note contained a waiver of inquisition and all exemption laws, as well as the declaration that it was "for debt before the 4th day of July 1849." There was evidence to go to the jury that the note was obtained by fraud; that at most it was but a cautionary note; that the amount due, if anything, was subsequently to be settled by an examination of William Koons's books, the defendant having kept no account except in his head, and that Koons (the real plaintiff) in reading it to the defendant had suppressed a material part. The judgment entered on this note was revived by amicable scire facias, signed by the defendant in 1868, and again in 1873. After the second revival upon the application of the defendant, the original judgment was opened, and he was let into a defence. The question now under discussion relates to the effect of the revivals upon the original judgments. As to the first revival, the learned judge instructed the jury in his general charge, as follows : " Again, if after the judgment had been thus given, say for five years, as is alleged on the part of the defendant, and then a renewal was taken by Mr. Koons, or by some one for him, to Henderson Monroe, and the latter signed it, as he said he did, upon the distinct understanding that the books were to be examined and the basis of the actual indebtedness ascertained, then the revival could not have given additional validity to the original debt." This instruction was not complained of, and it is referred to now only as it bears upon the charge in relation to the second revival, and which forms the subject of the 4th assignment. The portion of the charge referred to is as follows : " If at the time the second revival was taken, Mr. Monroe was induced to sign it, as he says, that he might get a statement out of Mr. Koons, the fact that he executed the second revival gives no additional validity to the original judgment." If the original judgment was obtained by fraud and misrepresentation, and the subsequent revivals were but a continuation of such fraud and misrepresentations, it is difficult to see how such revivals could add any-

[Monroe *v.* Monroe.]

thing to the validity of the original judgment. The mere fact of the revivals might have been a circumstance entitled to some consideration with the jury in deciding as to how much weight should be attached to the defendant's testimony, but no such point is involved in this assignment. If the defendant's story is believed the revivals could not add to the validity of the original judgment for the reason that they were obtained by fraud, and fraud vitiates everything it touches.

5. The portion of the charge embraced in this assignment is not error when read in its connection with the general charge. The remark of the court had reference only to the contradictory statements of William Koons on the one side, and Henderson Monroe on the other. As between them it was, as the court stated, purely a question of credibility.

Judgment affirmed.